**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DEREK S. THOME, *As Administrator of the Estate of Charity L. Thome, Deceased*, c/o Kline & Specter, P.C., 1525 Locust Street, Philadelphia, PA 19102 | : : : : : : : : : : : : : : : | **FILED PURSUANT TO 28 U.S.C. §§ 1367, 1391 AND LOCAL CIVIL RULE 5.1**<br><br>CIVIL ACTION NO.<br><br>COMPLAINT<br><br>JURY TRIAL DEMANDED |
| *Plaintiff*, v. | | |
| PENNSYLVANIA STATE POLICE OFFICERS JOHN DOE 1 THROUGH 20 1800 Elmerton Avenue Harrisburg, PA 17110 | | |
| *Defendants*. | | |

**COMPLAINT**

Plaintiff, Derek S. Thome, As Administrator of the Estate of Charity L. Thome, deceased, by and through his attorneys, Kline & Specter, P.C., alleges as follows:

1. Plaintiff, Derek S. Thome, As Administrator of the Estate of Charity L. Thome, deceased, is and adult citizen of the Commonwealth of Pennsylvania. By Letters of Administration Granted on August 18, 2020, Derek S. Thome was appointed Administrator of the Estate of Charity L. Thome, deceased.

2. Defendants Pennsylvania State Police Officers John Doe 1–20 were at all relevant times officers of the Pennsylvania State Police acting under color of law who responded to, or were in any way involved in, the vehicle chase, apprehension of, and/or fatal shooting of Charity L. Thome on March 16, 2020. At least two of Defendant Pennsylvania State Police Officers John Doe 1–20 drew their service weapons on Ms. Thome and shot her, resulting in her death. Despite

reasonable investigation, including, but not limited to, exhausting open records requests, Plaintiff does not know these officers' specific names but expects to determine them with certainty during the course of discovery.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1367(a), as certain of Plaintiff's claims arise under The Fourth and Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983, and, thus, this matter falls under the Court's original jurisdiction. Plaintiff's remaining claims are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Defendants can be found in, reside, or transact business in this District.

5. Venue is also proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because the events giving rise to the claim occurred in this District.

## MATERIAL FACTS

### Defendants' Fatal Shooting of Ms. Thome, The False Press Release, and the Eyewitness Account

6. On March 16, 2020, police officers from the Pennsylvania State Police, the City of Lebanon Police Department, and the North Lebanon Township Police Department all engaged in a pursuit of Charity L. Thome in their police cruisers.

7. Ms. Thome was known to the Pennsylvania State Police, the City of Lebanon Police Department, and the North Lebanon Township Police Departments, and they knew Ms. Thome had mental illness and struggled with substance abuse.

8. At some point in the chase, officers engaged in a "P.I.T." maneuver, disabling Ms.

Thome's car and spinning her out into a field in the 500 Block of King Street in Lebanon, Pennsylvania.

9. Following the P.I.T. maneuver, upon information and belief, Ms. Thome got out of her vehicle and proceeded on foot into the field.

10. Ms. Thome possessed no weapons of any kind.

11. While Ms. Thome was in the field, two officers from the Pennsylvania State Police, in the course and scope of their duty, acting affirmatively throughout, and acting under the color of law, drew their service weapons on Ms. Thome and fatally shot her.

12. During this incident, no police officers were injured in any way.

13. In a press release issued April 21, 2020, attached as **Exhibit A**, the Lebanon County District Attorney's Office stated that the Pennsylvania State Police officers involved were justified in their use of deadly force because Ms. Thome was in her car and posed a threat to officers because officers feared she could "ram [one of] the Officer's cruiser[s] [or] she could reverse and run over any officers on scene."

14. More specifically, officers claimed they "heard the acceleration of [Ms. Thome's] engine, witnessed her actively drive into [a] marked police cruiser, and saw her tires spin. The distance between the State Police and [Ms. Thome] measured approximately twenty (20) feet."

15. Also according to the press release, "Interviews of the troopers involved revealed they feared multiple outcomes, The State Police could not see the North Lebanon Township Officer; they did not know if he was inside or outside of his patrol vehicle as [Ms. Thome] accelerated. [Ms. Thome could continue to ram the Officer's cruiser; she could reverse and run over any officers on scene."

16. "Given the totality of [Ms. Thome's] violent, reckless, and dangerous actions on

the evening in question, the State Police drew their service weapons and fired upon [Ms. Thome,]" the press release states.

17.     The press release quoted Lebanon County District Attorney Pier Hess Graf as follows: "'Most of us will never know what it feels like as a police officer, faced with an immediate situation that requires action. Law enforcement involved in this case committed the most serious human act - they took a life. However, they did so in the face of an extremely fast-paced, tumultuous, and dangerous situation. They did so believing it necessary to save their fellow officers and themselves. They did so knowing the use of deadly force is necessary in only the gravest of situations. The totality of [Ms. Thome's] actions, the realities of the situation, and the split seconds which required the troopers to act all prove this shooting was justified,' said DA Hess Graf."

18.     As set forth above, the press release undoubtedly portrays that Ms. Thome remained in her vehicle during the entire incident and it was by virtue of her being in the vehicle that police officers claimed they feared for their lives and that their use of the most extreme type of force – deadly force – was justified.

19.     Under the description of the incident in the release, itself, and taking it as true, which is denied, Defendants Pennsylvania State Police Officers John Doe 1–20 acted unlawfully, giving rise to Plaintiff's claims, and the officers' use of deadly force was unjustified.

20.     The officers could have used substantially lesser means than killing Ms. Thome to deescalate the situation as the press release portrays it, including, but not limited to, disabling Ms. Thome's vehicle.

21.     Upon information and belief, however, the press release contains numerous material misrepresentations and/or falsehoods pertaining to the events leading up to the fatal

4

shooting of Ms. Thome.

22. Most notably, an independent, firsthand, eyewitness account reveals that Ms. Thome was *not* in her car when one or several of Defendants drew their service weapons on her, shot her, and killed her.

23. According to the eyewitness, who was directly across the street from the incident, the eyewitness heard five or six gunshots, first, a single gunshot, and then, within one or two seconds of that first gunshot, four or five more gunshots in rapid succession.

24. Within no more than fifteen seconds of having heard the gunshots, the eyewitness looked out of a window and saw a body lying on the ground, having been shot.

25. There were two officers directly adjacent to the body, apparently trying to resuscitate the body, and approximately eight other officers standing around the victim.

26. The body was approximately seven feet away from a green sedan, Ms. Thome's, which was in the field adjacent to the eyewitnesses' property facing North.

27. The green sedan's front, driver's side door was open.

28. Based on the eyewitness's perception, namely the no-more-than fifteen seconds that elapsed between the gunshots and when the eyewitness looked out the window, and the approximately seven feet between the body and the green sedan, there is no way that the person who was shot could have been inside the green sedan when the person was shot.

29. Later in the day, when it was light out, the eyewitness observed the involved green sedan. There was no indication that the green sedan had been shot at; in other words, there were no bullet holes or shattered glass that the eyewitness could see.

30. An officer visited the eyewitness later in the day on March 16, 2020.

31. The eyewitness reported the above account exactly as it is laid out above, or

substantially the same as it is laid out above, to the officer.

32. The press release from the District Attorney's Office, however, stands in stark contrast to this account, most notably in that it expressly states that Ms. Thome was in her car and, due to being in her car, posed a threat to officer safety justifying the use of deadly force.

**Defendants' Unconstitutional Conduct and Violations of Their Own Use-Of-Force Policies**

33. The use of unreasonable force during an arrest, an investigatory stop, or any other seizure of a person violates the Fourth Amendment and is actionable under the federal Civil Rights Act. *Graham v. Connor*, 490 U.S. 386, 390 (1989).

34. The Third Circuit has explained its inquiry regarding the unreasonable use of deadly force by police officers as follows: "Giving due regard to the pressures faced by the police, was it objectively reasonable for the officer to believe, in light of the totality of the circumstances, that deadly force was necessary to prevent the suspect's escape, and that the suspect posed a significant threat of death or serious physical injury to the officer or others? *In determining the reasonableness of all degrees of force, the Supreme Court has said that the factors to consider include the 'severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.' Abraham v. Raso,* 183 F.3d 279, 289-90 (3rd Cir. 1999) (emphasis in original) (citing *Graham*, 490 U.S. at 396).

35. Defendants actions violated Ms. Thome's clearly established constitutional rights by using objectively unreasonable force, *i.e.*, deadly force, under the circumstances.

36. Defendants also violated their own policies regarding the use of force.

37. The Pennsylvania State Police's "Use of Force" policy, attached as ***Exhibit B***, defines "Deadly Force" as "[f]orce which, under the circumstances in which it is used, is readily

capable of causing death or serious bodily injury."

    38.    The "Use of Force" policy further provides for use of Deadly Force only as follows:

A. Arrest. Members and enforcement officers who are trained and authorized to carry firearms may use deadly force to affect an arrest or prevent an escape when:

    1.    Such force is necessary to prevent the arrest from being defeated by resistance or escape; and

    2.    The person to be arrested has committed or attempted a forcible felony, or is attempting to escape and possesses a deadly weapon and there is probable cause to believe that the person to be arrested poses a threat of death or serious bodily injury to the member or enforcement officer or others, or otherwise indicates that he/she will endanger human life or inflict serious bodily injury unless arrested without delay; and

    3.    If, when feasible, some warning has been given.

B. Protection: Members and enforcement officers who are trained and authorized to carry firearms may use deadly force to protect themselves or another from what they reasonably believe to be an imminent danger of death or serious bodily injury.

    39.    The Use of Force policy, with respect to officers' use of their service weapons, further provides, in relevant part, as follows:

A. Firearms: Members and enforcement officers who are trained and authorized to carry firearms shall only discharge a firearm when the use of deadly force is justified. Members and enforcement officers shall not shoot to kill or shoot to wound, but shall shoot to stop the action by causing the instant incapacitation of the threat. For maximum stopping effectiveness, and to minimize the danger to innocent bystanders, members and enforcement officers should:

    1.    Shoot at the center of available body mass presented by the threat.

    2.    Shoot at an alternative target, such as the head or pelvic area, when circumstances (e.g., body armor, drugs, adrenaline) render the center mass of torso target ineffective at immediately stopping the action.

    3.    Shoot at the head when the member or enforcement officer has a reasonable belief that the subject is in possession of a bomb or other explosive device, with the intent to carry out a suicide/homicide bombing, in order to facilitate

        the instant incapacitation of the subject while minimizing the potential for striking the bomb/explosive device.

40. Upon information and belief, the two or more of Defendants Pennsylvania State Police Officers John Doe 1–20 who fatally shot Ms. Thome shot her with an intent to kill.

41. This use of deadly force was not authorized under the Pennsylvania State Police's Use of Force policy, the federal or Pennsylvania Constitutions, or otherwise under the law.

42. The affirmative acts of Defendants Pennsylvania State Police Officers John Doe 1–20 directly and proximately caused the injuries and damages suffered by Plaintiff.

43. The dangerous, reckless, and/or intentional and affirmative conduct of Defendants Pennsylvania State Police Officers John Doe 1–20 were the only cause or factor, or were substantial factors, in causing the injuries sustained by Plaintiff.

44. As a direct and proximate result of the dangerous, reckless, and/or intentional and affirmative actions and conduct of Defendants Pennsylvania State Police Officers John Doe 1–20, Charity L. Thome was caused to suffer an untimely death at the age of 42.

**COUNT I – CIVIL RIGHTS VIOLATIONS UNDER 42 U.S.C. § 1983**
**UNLAWFUL USE OF UNREASONABLE AND EXCESSIVE FORCE**
<u>**Plaintiff v. Defendants Pennsylvania State Police Officers John Doe 1–20**</u>

45. Plaintiff incorporates the preceding paragraphs of this Complaint and makes them part of this Count as if fully set forth herein.

46. At all relevant times, Defendants were individuals subject to suit pursuant to 42 U.S.C. § 1983.

47. Defendants' constitutional torts are not governed or limited in any way by 42 Pa. C.S. § 8541, *et seq.* or 42 Pa. C.S. § 8521, *et seq.*

48. At all relevant times, Defendants acted under color of state law

49. At all relevant times, Defendants knew that Charity L. Thome's right to be secure against unreasonable seizures and/or deprivations of life, liberty, and property without due process were clearly-established constitutional rights.

50. Defendants violated Charity L. Thome's right to be secure against unreasonable seizures and/or deprivations of life, liberty, and property without due process.

51. At all relevant times, Charity L. Thome posed no actual or imminent threat of death and/or serious bodily injury to any of the involved police officers, including all Defendants pedestrians, or other civilian motorists.

52. Nonetheless, Defendants acted unreasonably, unjustifiably, and in violation of Charity L. Thome's clearly established constitutional rights by drawing their service weapons on Charity L. Thome and fatally shooting her.

53. As a direct and proximate result of Defendants' unreasonable, unjustifiable, and unconstitutional conduct, Plaintiff was caused to suffer the injuries described in this Complaint, including Charity L. Thome's untimely death.

**WHEREFORE**, Plaintiff Derek S. Thome, As Administrator of the Estate of Charity L. Thome, respectfully requests that this Honorable Court enter Judgment in his favor and against Defendants, jointly and severally, in an amount in excess of any arbitration limit in the District Court for the Middle District of Pennsylvania, including interest, plus Plaintiff's costs and attorney's fees, and punitive damages against all Defendants, as well as any other relief this Court deems just.

## COUNT II – CIVIL RIGHTS VIOLATIONS UNDER 42 U.S.C. § 1983
## STATE-CREATED DANGER
## <u>Plaintiff v. Defendants Pennsylvania State Police Officers John Doe 1–20</u>

54. Plaintiff incorporates the preceding paragraphs of this Complaint and makes them part of this Count as if fully set forth herein.

55. At all relevant times, Defendants were individuals subject to suit pursuant to 42 U.S.C. § 1983.

56. Defendants' constitutional torts are not governed or limited in any way by 42 Pa. C.S. § 8541, *et seq.* or 42 Pa. C.S. § 8521, *et seq.*

57. At all relevant times, Defendants acted under color of state law.

58. At all relevant times, Defendants knew that Charity L. Thome's right to be secure against unreasonable seizures and/or deprivations of life, liberty, and property without due process were clearly-established constitutional rights.

59. Defendants violated Charity L. Thome's right to be secure against unreasonable seizures and/or deprivations of life, liberty, and property without due process.

60. Defendants' actions by drawing their service weapons on Charity L. Thome and fatally shooting her without justification constituted a foreseeable harm.

61. Defendants' actions by drawing their service weapons on Charity L. Thome and fatally shooting her without justification shocks the conscience.

62. A relationship between Defendants, acting under color of state law, and Ms. Thome, existed such that Ms. Thome was a foreseeable victim of the Defendants' acts or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions as opposed to the public in general.

63. Defendants, acting under color of state law, used their authority in a way that created a danger to Ms. Thome that rendered her more vulnerable than had Defendants not acted at all.

**WHEREFORE**, Plaintiff Derek S. Thome, As Administrator of the Estate of Charity L. Thome, respectfully requests that this Honorable Court enter Judgment in his favor and against Defendants, jointly and severally, in an amount in excess of any arbitration limit in the District Court for the Middle District of Pennsylvania, including interest, plus Plaintiff's costs and attorney's fees, and punitive damages against all Defendants, as well as any other relief this Court deems just.

### COUNT III – ASSAULT
### Plaintiff v.  Defendants Pennsylvania State Police Officers John Doe 1–20

64. Plaintiff incorporates the preceding paragraphs of this Complaint and makes them part of this Count as if fully set forth herein.

65. Defendants' actions and conduct, as described more fully herein, constituted an intentional display of force which gave Charity L. Thome reason to fear or expect immediate bodily harm or injury by drawing their service weapons on Ms. Thome and firing at least six shots at her, killing her.

66. The conduct set forth above was the sole factor, or was a substantial factor and factual cause, in the death of Charity L. Thome, rendering Defendants liable for the injuries and damages claimed herein.

**WHEREFORE**, Plaintiff Derek S. Thome, As Administrator of the Estate of Charity L. Thome, respectfully requests that this Honorable Court enter Judgment in his favor and against Defendants, jointly and severally, in an amount in excess of any arbitration limit in the District

Court for the Middle District of Pennsylvania, including interest, plus Plaintiff's costs and attorney's fees, and punitive damages against all Defendants, as well as any other relief this Court deems just.

## COUNT IV – BATTERY
### Plaintiff v. Defendants Pennsylvania State Police Officers John Doe 1–20

67. Plaintiff incorporates the preceding paragraphs of this Complaint and makes them part of this Count as if fully set forth herein.

68. Defendants' actions and conduct, as described more fully herein, constituted physical contact intended to harm another when Defendants drew their service weapons on Ms. Thome, fired at least six shots at her, and killed her.

69. The conduct set forth above was the sole factor, or was a substantial factor and factual cause, in the death of Charity L. Thome, rendering Defendants liable for the injuries and damages claimed herein.

**WHEREFORE**, Plaintiff Derek S. Thome, As Administrator of the Estate of Charity L. Thome, respectfully requests that this Honorable Court enter Judgment in his favor and against Defendants, jointly and severally, in an amount in excess of any arbitration limit in the District Court for the Middle District of Pennsylvania, including interest, plus Plaintiff's costs and attorney's fees, and punitive damages against all Defendants, as well as any other relief this Court deems just.

## COUNT V – WRONGFUL DEATH
### PLAINTIFF V. ALL DEFENDANTS

70. Plaintiff incorporates the preceding paragraphs of this Complaint and makes them part of this Count as if fully set forth herein.

71. Plaintiff brings this action under and by virtue of the Wrongful Death Act, 42 Pa. C.S.A. §8301.

72. Under the Wrongful Death Act, Charity L. Thome left surviving the following persons who may be entitled to recover damages: D.T., a minor, and C.F., a minor.

73. As a result of the intentional conduct of the Defendants set forth herein, Charity L. Thome was caused serious and grave injuries including death, resulting in an entitlement to damages by said beneficiaries under the Wrongful Death Act.

74. Plaintiff, as the Administrator of the Estate of Charity L. Thome, Derek S. Thome, the Administrator, claims the full measure of damages recoverable under the Wrongful Death Act.

**WHEREFORE**, Plaintiff Derek S. Thome, As Administrator of the Estate of Charity L. Thome, respectfully requests that this Honorable Court enter Judgment in his favor and against Defendants, jointly and severally, in an amount in excess of any arbitration limit in the District Court for the Middle District of Pennsylvania, including interest, plus Plaintiff's costs and attorney's fees, and punitive damages against all Defendants, as well as any other relief this Court deems just.

### COUNT VI – SURVIVAL ACTION
### PLAINTIFF V. ALL DEFENDANTS

75. Plaintiff incorporates the preceding paragraphs of this Complaint and makes them part of this Count as if fully set forth herein.

76. Plaintiff brings this Survival Action on behalf of the Estate of Charity L. Thome, Deceased, under and by virtue of 42 Pa. C.S.A. §8302.

77. The persons entitled to the Estate of Charity L. Thome, Deceased, are as follows: D.T., a minor, and C.F., a minor.

78. As a result of the intentional conduct of the Defendants set forth herein, as set forth herein, Charity L. Thome was caused serious and grave injuries including death resulting in the entitlement to damages under the Survival Act.

79. On behalf of the Survival Act beneficiaries, Derek S. Thome, the Administrator, claims all damages available under the Survival Act.

**WHEREFORE**, Plaintiff Derek S. Thome, As Administrator of the Estate of Charity L. Thome, respectfully requests that this Honorable Court enter Judgment in his favor and against Defendants, jointly and severally, in an amount in excess of any arbitration limit in the District Court for the Middle District of Pennsylvania, including interest, plus Plaintiff's costs and attorney's fees, and punitive damages against all Defendants, as well as any other relief this Court deems just.

Respectfully submitted,

**KLINE & SPECTER, P.C.**

Dated: November 19, 2020

By: _____
THOMAS R. KLINE, ESQUIRE
TRACIE L. PALMER, ESQUIRE
BENJAMIN O. PRESENT, ESQUIRE
Attorney I.D. Nos. 28895 / 312098 / 322682
1525 Locust Street, 19th Floor
Philadelphia, PA 19102
215-772-1000
*Attorneys for Plaintiffs*