*Exhibit B*

FR 9-1
5/30/2019

## USE OF FORCE

1.01  POLICY

Members and enforcement officers are authorized to use reasonable force, when necessary, in the performance of their duties, after consideration of the totality of the circumstances, to successfully attain lawful objectives. Members and enforcement officers shall be guided by Department training, the use-of-force array, applicable statutes, the totality of circumstances of the incident, and this regulation.

1.02  DEFINITIONS

   A.  Deadly Force: Force which, under the circumstances in which it is used, is readily capable of causing death or serious bodily injury.

   B.  Forcible Felony: A felony involving actual or threatened serious bodily injury.

   C.  Less-Lethal Force: Force which, under the circumstances in which it is applied, is neither calculated nor likely or intended to cause death or serious bodily injury. This includes, but is not limited to, the use of a less-lethal weapon, physical strikes, kicks, and other physical force.

   D.  Less-Lethal Weapon: A weapon, device, or instrument which by design, purpose, and intended or actual use is neither calculated nor likely or intended to produce death or serious bodily injury. Less-lethal weapons include, but are not limited to, the following: batons, oleoresin capsicum (OC) spray, conducted electrical weapons (CEWs), and bean-bag rounds.

   E.  Lethal Weapon: Any firearm, whether loaded or unloaded, or any device designed as a weapon and capable of producing death or serious bodily injury, or any other device or instrument which, in the manner in which it is used or intended to be used, is calculated or likely to produce death or serious bodily injury.

   F.  Probable Cause: A reasonable ground for belief, based on the facts and circumstances, which is more than mere suspicion and less than the standard of beyond a reasonable doubt.

FR 9-1
5/30/2019

- G. Quantum of Force: The reasonably foreseeable effects and injuries to the subject of a chosen force option, based upon the totality of the circumstances surrounding the application of force.

- H. Reasonable Belief: An objective belief based on the totality of the known circumstances.

- I. Reasonable Force: The amount of force reasonably believed by the member or enforcement officer to be necessary under the totality of the circumstances to affect an arrest; defend oneself or another from bodily harm; or to prevent escape, suicide, or the commission of a crime. However, deadly force is only reasonable when the requirements of this regulation governing the use of deadly force are also satisfied.

- J. Serious Bodily Injury: Bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ.

- K. Totality of Circumstances: All of the facts and circumstances of a particular incident including, but not limited to, the severity of the crime at issue, whether the subject poses an immediate threat to the safety of law enforcement officers or others, and whether the subject is actively resisting arrest or attempting to evade arrest by flight. Other factors that should be considered include, but are not limited to:

    1. Officer-subject factors, such as age; sex; size; skill; strength; endurance; multiple subjects; multiple officers; and crowds, both hostile and friendly.

    2. Special circumstances, such as the subject's proximity to a weapon; special knowledge of the subject; injury, exhaustion, or disability to the officer; ground fighting; imminent danger; alcohol or drug influence; environmental factors; resolution time; reactionary gap; and other available options for resolution (e.g., backup officers, Special Emergency Response Team).

    3. Subject's level of resistance, psychological intimidation, verbal noncompliance, passive resistance, active resistance, active aggression, and aggravated active aggression (deadly force).

- L. Without Delay: As soon as practically possible.

2020-06-29          2020-0548          PSP/RTK000004

FR 9-1
5/30/2019

1.03    DUTIES AND RESPONSIBILITIES

   A.   Director, Bureau of Training and Education:

   1.   Ensure use-of-force policy and guidelines update and refresher training are included in annual in-service training.

   2.   Ensure Cadets and enforcement officer trainees complete the required Department training courses, including use-of-force policy and guidelines and weapons qualification and proficiency standards.

   3.   Ensure training records of all members and enforcement officers are maintained and updated, as necessary.

   4.   Ensure **Supplemental Use-of-Force Training** is provided to affected members and enforcement officers who have been adjudicated with an improper use of force **pursuant to** AR 4-25, Internal Investigations.

   B.   Troop Commanders and Bureau/Office Directors:

   1.   Ensure members and enforcement officers under their command attend and complete scheduled Department training in the use of force.

   2.   Ensure incidents involving the use of force are reported in accordance with Department regulations.

   3.   Ensure members and enforcement officers who have been adjudicated with an improper use of force **pursuant to** AR 4-25 attend **Supplemental Use-of-Force Training**.

   C.   Members and Enforcement Officers:

   1.   Complete Department training relating to the use of force and lethal and less-lethal weapons.

   2.   Carry/use only Department-authorized weapons in the performance of their duties.

-3-

FR 9-1
5/30/2019

1.04     USE-OF-FORCE ARRAY

Members and enforcement officers are authorized to use reasonable force, when necessary, in the performance of their duties, after consideration of the totality of the circumstances. The use-of-force array (Appendage A) is an illustration of Department-sanctioned force options available to members and enforcement officers. Each force option is calculated to achieve control of an incident or situation by forcing the offender's compliance with member or enforcement officer commands (compliance), restraining or temporarily incapacitating the offender (incapacitate/restrain), or through the use of deadly force to immediately stop the action (stop action).

1.05     DEADLY FORCE—GENERAL

Members and enforcement officers who are trained and authorized to carry firearms shall use deadly force in the performance of official duties in accordance with this regulation, other Department regulations, and existing statutes. Nothing contained in this regulation shall preclude the use of deadly force in self-defense, when legally justified.

A.  Arrest: Members and enforcement officers who are trained and authorized to carry firearms may use deadly force to affect an arrest or prevent an escape when:

1.  Such force is necessary to prevent the arrest from being defeated by resistance or escape; and

2.  The person to be arrested has committed or attempted a forcible felony, or is attempting to escape and possesses a deadly weapon and there is probable cause to believe that the person to be arrested poses a threat of death or serious bodily injury to the member or enforcement officer or others, or otherwise indicates that he/she will endanger human life or inflict serious bodily injury unless arrested without delay; and

3.  If, when feasible, some warning has been given.

B.  Protection: Members and enforcement officers who are trained and authorized to carry firearms may use deadly force to protect themselves or another from what they reasonably believe to be an imminent danger of death or serious bodily injury.

1.06   DEADLY FORCE—SPECIAL CONSIDERATIONS, RESTRICTIONS, AND WARNINGS

    A.   Firearms: Members and enforcement officers who are trained and authorized to carry firearms shall only discharge a firearm when the use of deadly force is justified. Members and enforcement officers shall not shoot to kill or shoot to wound, but shall shoot to stop the action by causing the instant incapacitation of the threat. For maximum stopping effectiveness, and to minimize the danger to innocent bystanders, members and enforcement officers should:

        1.   Shoot at the center of available body mass presented by the threat.

        2.   Shoot at an alternative target, such as the head or pelvic area, when circumstances (e.g., body armor, drugs, adrenaline) render the center mass of torso target ineffective at immediately stopping the action.

        3.   Shoot at the head when the member or enforcement officer has a reasonable belief that the subject is in possession of a bomb or other explosive device, with the intent to carry out a suicide/homicide bombing, in order to facilitate the instant incapacitation of the subject while minimizing the potential for striking the bomb/explosive device.

    B.   Risk to Innocent Bystanders: Members and enforcement officers who are trained and authorized to carry firearms, and are faced with the decision to use deadly force, must be cognizant of any innocent third parties that may be present in or near the line of fire or in deadly proximity to an explosive blast in the case of a suicidal/homicidal bomber. Members and enforcement officers are prohibited from discharging firearms when it appears reasonably likely an innocent person may be injured, unless failure to use deadly force would likely result in the immediate death or serious bodily injury of the member, enforcement officer, or other innocent persons.

    C.   Un-holstering and Handling of Firearms: Members and enforcement officers who are trained and authorized to carry firearms may un-holster their firearm in certain situations for safety (e.g., building searches for suspects, serving search or felony arrest warrants, checking vehicles in high-risk situations, felony arrest situations). Members and enforcement officers

FR 9-1
5/30/2019

shall exercise a reasonable standard of care with the drawn weapon by pointing the muzzle in a safe direction, keeping the trigger finger outside the trigger guard and parallel to the cylinder or slide, and ensuring that a weapon capable of double action is only cocked as appropriate and judicious, given the circumstances, in accordance with current Department training. All members and enforcement officers are expected to maintain proficiency with regard to the safe handling and use of all Department-issued or -approved firearms. Except for general maintenance, storage, or authorized training, members and enforcement officers shall not draw or exhibit a firearm unless circumstances create a strong reasonable belief it may be necessary to use the weapon in conformance with Department policy. The playful or wanton pointing of a firearm at anyone, on or off duty, or the careless or negligent use of a firearm, is prohibited.

D. Shooting at or From Moving Motor Vehicles or Machinery: Members and enforcement officers who are trained and authorized to carry firearms shall not discharge a firearm at or from a moving motor vehicle or machinery unless:

   1. At least one of the following circumstances exist:

      a. As a last resort measure when the actor, by using the vehicle, machinery, or other means, poses an imminent danger of death or serious bodily injury to the member or enforcement officer, another law enforcement officer, or another person; or

      b. As a last resort measure to prevent the escape of an actor who is in flight after committing or attempting a forcible felony and, by his or her escape, poses a threat of death or serious bodily injury to the member or enforcement officer, another law enforcement officer, or another person; or

      c. The use of deadly force is otherwise justified; and

   2. The following factors have been considered, as applicable:

      a. The difficulty of hitting a moving target, and/or the difficulty of hitting a target while shooting from a moving vehicle or machinery.

2020-06-29    2020-0548    PSP/RTK000008

      b.    Ricocheting bullets striking unintended targets.

      c.    Population density.

      d.    The inability to stop a vehicle's or machinery's momentum, even when the target actor is hit, and the damage or injury which might result from causing a vehicle or machinery to go out of control.

E.    Warning Shots: Members and enforcement officers who are trained and authorized to carry firearms are prohibited from firing warning shots under any circumstances. Warning shots are usually not aimed at a specific target and may create a danger to others. Additionally, other law enforcement officers may mistake the intention and subsequently shoot without appropriate justification.

F.    Rescue Shots: A rescue shot identifies a location and signals for appropriate assistance. Members and enforcement officers who are trained and authorized to carry firearms and are in danger of death or serious bodily injury and incapacitated to the extent they cannot signal in any other manner, may fire a rescue shot(s). Members and enforcement officers must exercise reasonable care (e.g., shooting away from any other individuals, homes, vehicles) when firing rescue shots.

G.    Directed-Fire Shots: In some extreme circumstances, it may be necessary for members and/or enforcement officers who are trained and authorized to carry firearms to employ a base of weapons fire directed at a subject's location with the intent of stopping his/her actions, restricting his/her movement, and/or preventing him/her from endangering law enforcement officers or innocent persons in vulnerable positions. This tactic is a limited, task-specific action used to affect an arrest(s), rescue a trapped individual(s), maneuver out of the kill zone, and/or accomplish other emergency objectives. Members and enforcement officers shall be cognizant of any innocent third parties that may be present in or near the line of fire when employing this tactic.

H.    Destruction of Animals:

    1.    Members: Members may use a firearm to kill a dangerous animal in self-defense or defense of another person, or to terminate the suffering of a critically injured or sick animal,

FR 9-1
5/30/2019

when other means of disposal are impractical. Whenever possible, the owner of the animal to be destroyed shall be contacted and written permission obtained. In the event the owner cannot be located, the identification of any available witnesses who will attest to the need to destroy the animal shall be recorded. Whenever the shooting of an animal is necessary, precautions shall be taken to protect any nearby persons or property. All actions taken shall be documented in the appropriate report.

2.  Enforcement officers: Enforcement officers who are trained and authorized to carry firearms may use a firearm to kill a dangerous animal in self-defense or defense of another person. Whenever the shooting of an animal is necessary, precautions shall be taken to protect any nearby persons or property. All actions taken shall be documented in the appropriate report.

1.07   LESS-LETHAL FORCE—GENERAL

Members and enforcement officers may use less-lethal force in the performance of official duties in accordance with this regulation, other Department regulations, and existing statutes.

A.  Use of Less-Lethal Force: Unless further restricted by this regulation or other statutes, members and enforcement officers may only use less-lethal force under the following circumstances:

1.  Arrest: Members and enforcement officers may use less-lethal force which they reasonably believe to be necessary to make an arrest and defend themselves or another from bodily harm while making an arrest. (In such cases, members and enforcement officers shall be guided by 234 Pa. Code, Rules of Criminal Procedure, Rule 441, regarding the release of such individuals from custody.)

2.  Protection: Members and enforcement officers may use less-lethal force when they reasonably believe that such force is immediately necessary for the purpose of protecting themselves or another from bodily injury, from the unlawful force of another person, or the actions of a dangerous animal.

-8-

      3.     Prevent escape: Members and enforcement officers may use less-lethal force which they reasonably believe is necessary to prevent the escape of a person in their custody and defend themselves while preventing the escape.

      4.     Preventing suicide: Members and enforcement officers may use less-lethal force which they reasonably believe is necessary to prevent another person from committing suicide or inflicting serious bodily injury upon themselves.

      5.     Prevent crime: Members and enforcement officers may use less-lethal force which they reasonably believe is necessary to prevent another person from committing or consummating the commission of a crime involving, or threatening, bodily injury, damage to or loss of property, or a breach of the peace.

  B.     Considerations: Members and enforcement officers shall consider the totality of the circumstances when making a determination as to the reasonableness of using less-lethal force. Factors to consider in making a determination of reasonableness include, but are not limited to, the following: the severity of the crime at issue; whether the subject poses an immediate threat to the safety of the member, enforcement officer, or others; whether the subject is armed; the number of persons with whom the member or enforcement officer must contend; and whether the subject is actively resisting arrest.

1.08     LESS-LETHAL WEAPONS—SPECIAL CONSIDERATIONS, RESTRICTIONS, AND WARNINGS

  A.     General: Members and enforcement officers shall only utilize less-lethal weapons in the performance of official duties.

  B.     Use of Less-Lethal Weapons: Members and enforcement officers shall only use a less-lethal weapon in the manner in which they have received Department training on the use of the weapon. The playful, punitive, wanton, careless, or negligent use of a less-lethal weapon on duty, or any use of a less-lethal weapon not in the performance of duty, is prohibited.

      1.     Flight alone is insufficient to justify deployment of a less-lethal weapon. Consideration should include the nature of the precipitating offense, the level of suspicion with

FR 9-1
5/30/2019

    respect to the person fleeing, and the risk of danger to the subject or others if the subject is not apprehended immediately.

2. Generally, less-lethal weapons should not be used against an operator of a motor vehicle or machinery that is in motion, unless the totality of the circumstances otherwise dictates their use and consideration has been given to the dangers of the inability to stop a vehicle's or machinery's momentum, even when the target actor is hit, and the damage or injury which might result from causing a vehicle or machinery to go out of control.

C. CEW: The following prohibitions and warnings apply specifically to the use of the issued CEW:

1. The use of the CEW is prohibited where it is known that a potentially flammable, volatile, or explosive material is present, including, but not limited to, OC spray with volatile propellant, flammable liquid(s), natural gas, or propane.

2. The use of the CEW is prohibited where the subject's fall could likely result in death (such as in water or on an elevated structure), unless there is justification for the use of deadly force.

3. Members and enforcement officers shall expose the subject only to the number of discharge cycles reasonably necessary to accomplish the legitimate operational objective. Each separate discharge cycle of a CEW is a separate use of force that must be justified. In determining the need for additional discharge cycles, members and enforcement officers should be aware that a subject may not be able to respond to commands during, or possibly immediately following, exposure. Therefore, when tactically reasonable, members and enforcement officers should attempt to handcuff or control the subject while the individual is incapacitated from the exposure to the CEW.

4. As in all uses of force, certain individuals may be more susceptible to injury. Members and enforcement officers should be aware of the greater potential for injury when using a CEW against children; the elderly; persons of small stature, irrespective of age; or those who the

2020-06-29          2020-0548          PSP/RTK000012

    member or enforcement officer has reason to believe are pregnant, equipped with a pacemaker, or in obvious ill health.

  5. Absent exigent circumstances, or unless deadly force would otherwise be justified, members and enforcement officers utilizing the CEW in drive-stun mode shall not intentionally target areas of the body susceptible to crush injury (e.g., trachea, testicles).

  6. When circumstances permit and it is tactically sound, a verbal warning that a "TASER" will be used, and an opportunity for the subject to comply with verbal commands, should be given by the member or enforcement officer prior to discharging a CEW.

1.09 REPORTING USE-OF-FORCE INCIDENTS

Members and enforcement officers involved in any use-of-force incident shall report the incident, as soon as practical, to a supervisor, who shall assist with ensuring compliance with applicable Department regulations. The reasons required for the use of any force shall be detailed in the applicable investigative report(s), and an attempt shall be made to photograph any injuries resulting from the use of force. The following additional direction is provided:

 A. Deadly Force: Refer to AR 4-25, Internal Investigations, and OM 7-2, Field Reporting, for further guidance.

 B. Less-Lethal Force: As soon as practical, supervisors shall complete a BlueTeam entry for subordinates in accordance with AR 4-25 and/or when any of the following occurs in conjunction with a use-of-force incident:

  1. The issued CEW is discharged.

  2. The issued OC spray is discharged.

  3. The issued baton is used on any person.

1.10 RENDERING MEDICAL AID

After employing any force, including deadly or less-lethal, members and enforcement officers shall look for evidence of injury, render appropriate

FR 9-1
5/30/2019

> medical aid, and request further medical assistance, when necessary, for the subject and any other injured individuals, as soon as it is safe to do so. Any aid provided shall be documented in the appropriate report(s). (For specific direction on medical aid subsequent to a CEW discharge, refer to FR 9-4, Conducted Electrical Weapons.)